T.C. Memo. 1997-277


UNITED STATES TAX COURT


MARGARET M. MERKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26855-95.                    Filed June 18, 1997.


Margaret M. Merker, pro se.

Marjory A. Gilbert, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


POWELL, Special Trial Judge:  This case was assigned
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]

---

[1]  Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the years in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1992 and 1993 in the amounts of $799 and $791, respectively. Respondent also determined additions to tax pursuant to section 6651(a) in the respective amounts of $199.75 and $197.75. Petitioner resided in Chicago, Illinois, at the time she filed her petition.

After concessions,[2] the primary issue is whether amounts received by petitioner as a disability retirement annuity under the Federal Employees' Retirement System (FERS)[3] are excludable from gross income for the years in issue.

FINDINGS OF FACT

Petitioner worked in a distribution center for the U.S. Postal Service (Postal Service) from August 1984 to October 1990. As a result of the inhalation of dust emanating from the postal machines petitioner developed severe asthma or "occupational

---

[2] Respondent concedes that for the taxable years 1992 and 1993 (1) petitioner is not liable for the additions to tax under sec. 6651(a) due to petitioner's reliance on the erroneous advice of the U.S. Office of Personnel Management, discussed infra; (2) petitioner is entitled to credits for the permanently and totally disabled pursuant to sec. 22 in the amounts of $472 and $463, respectively; and (3) if the FERS disability retirement annuity is not subject to Federal income tax, petitioner was not required to file Federal income tax returns. Petitioner concedes that the interest and dividends described in the notice of deficiency constitute taxable income.

[3] Congress created the Federal Employees' Retirement System, the successor to the Civil Service Retirement System, with the enactment of the Federal Employees' Retirement System Act of 1986, Pub. L. 99-335, 100 Stat. 514, codified as amended at 5 U.S.C. secs. 8401-8479 (1994).

disease". To compound petitioner's medical problems, petitioner was injured when she fell while on the job. Petitioner has severe arthritis, has had one knee replaced, and, as of the date of trial, was scheduled for surgery to replace her other knee. These maladies have left petitioner completely and permanently disabled. In October 1990, at the age of 54, petitioner retired from the Postal Service due to her disability. Petitioner subsequently began receiving a FERS disability retirement annuity (disability annuity). Petitioner received disability annuity payments during 1992 and 1993 in the amounts of $10,954 and $11,182, respectively.

Petitioner was told by the U.S. Office of Personnel Management (OPM) that her disability annuity was not subject to Federal income tax. No Federal income tax was withheld from the payments. As a result of the advice from OPM petitioner did not file Federal income tax returns for the taxable years 1992, 1993, or 1994.

Respondent issued a notice of deficiency for the taxable years 1992 and 1993. In the notice of deficiency respondent determined that petitioner failed to report the disability annuity payments, as well as interest and dividend income in the amounts of $258 and $149, respectively, as gross income for the taxable years 1992 and 1993. As of the date of trial, no notice

of deficiency had been issued to petitioner for the 1994 taxable year.

OPINION

Petitioner's brief does not directly address the taxability of the disability annuity but rather expresses petitioner's frustration and anger at the U.S. Government.  Her various statements, requests, and arguments reflect these feelings.  This Court is a court of limited jurisdiction.  See sec. 7442; Wilt v. Commissioner, 60 T.C. 977, 978 (1973).  Our jurisdiction to redetermine a deficiency is dependent on the issuance of a valid notice of deficiency.  Sec. 6213(a); Rule 13(a); Estate of Bartels v. Commissioner, 106 T.C. 430, 435 (1996); Levitt v. Commissioner, 97 T.C. 437, 441 (1991).  Our jurisdiction does not extend to settling employment disputes with various departments and agencies of the United States.  See sec. 7442; Steines v. Commissioner, T.C. Memo. 1991-588, affd. without published opinion 12 F.3d 1101 (7th Cir. 1993).  The issue over which we have jurisdiction is whether petitioner's FERS disability annuity payments, or any portion thereof, are excludable from gross income.[4]

Section 61(a) defines gross income broadly as "all income from whatever source derived".  The Supreme Court "has given a liberal construction to this broad phraseology in recognition of

---

[4]  Petitioner's petition also sought to bring her 1994 taxable year before the Court.  Since no notice of deficiency has been issued for petitioner's 1994 taxable year, we lack jurisdiction over petitioner's 1994 taxable year.  Estate of Bartels v. Commissioner, 106 T.C. 430 (1996).

the intention of Congress to tax all gains except those specifically exempted."  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  Exclusions from income are matters of legislative grace and are construed narrowly.  Commissioner v. Schleier, 515 U.S. ___, ___, 115 S. Ct. 2159, 2163 (1995); Mostowy v. United States, 966 F.2d 668, 671 (Fed. Cir. 1992).  A taxpayer seeking a deduction or exclusion "must be able to point to an applicable statute and show that he comes within its terms."  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Commissioner v. Schleier, supra.

Generally, section 72(b) excludes from gross income any amount received as an annuity under an annuity, endowment, or life insurance contract to the extent such an amount is attributable to the taxpayer's investment in the contract. Section 1.72-15(b), Income Tax Regs., provides that, as a general rule, section 72 does not apply to any amount received as an accident or health benefit.

Section 104(a) excludes from gross income any amounts described in paragraphs (1) through (5) of that section. Paragraphs (4) and (5) of section 104(a) are, on their face, inapplicable to the facts before us, and we focus our attention on the remaining paragraphs.[5]  In addition, section 105(a)

---

[5]  Sec. 104(a)(4) applies to taxpayers that have served in the armed forces or certain other organizations with which petitioner
(continued...)

includes in gross income certain amounts received under accident and health plans.

Section 104(a)(1)

Section 104(a)(1) excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness".  To meet the definition of "workmen's compensation acts" for purposes of section 104(a)(1) the statute in issue must require, as a precondition to eligibility for benefits, that the injury be incurred in the course of employment.  Take v. Commissioner, 804 F.2d 553, 557 (9th Cir. 1986), affg. 82 T.C. 630, 634 (1984); Haar v. Commissioner, 78 T.C. 864, 868 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983).  The relevant inquiry is into the nature of the statute pursuant to which the payment is made and not the source of the particular taxpayer's injury.  Smelley v. United States, 806 F. Supp. 932, 935 (N.D. Ala. 1992), affd. per curiam 3 F.3d 389 (11th Cir. 1993).  Thus, if the statute does not qualify, the fact that the taxpayer's injury was in fact work related is irrelevant.  Id.

Eligibility for disability retirement benefits under FERS is dependent on completion of 18 months of creditable civilian

---

[5](...continued)
has had no affiliation.  Sec. 104(a)(5) applies to victims of terrorist attacks.  Petitioner does not purport to be the victim of a terrorist attack.

service and a determination of disability.  5 U.S.C. sec. 8451(a)(1)(A) (1994).  Disability is defined in 5 U.S.C. sec. 8451(a)(1)(B) (1994), which provides:

> For purposes of this subsection, an employee shall be considered disabled only if the employee is found by the Office [OPM] to be unable, because of disease or injury, to render useful and efficient service in the employee's position.

Under this statute a taxpayer's disability, and thus eligibility for benefits, depends upon the ability to perform the tasks required by the employment, not the place of injury. Petitioner's disability annuity payments were made pursuant to 5 U.S.C. section 8451(a)(1).  Because that section does not distinguish between injuries occurring on the job or elsewhere, section 104(a)(1) does not exclude the disability annuity payments received by petitioner from gross income.  See Haar v. Commissioner, supra at 866-868 (holding that similar wording in 5 U.S.C. sec. 8331(6), relating to the Civil Service Retirement System, did not distinguish between injuries occurring on and off the job).[6]

Section 104(a)(2)

Section 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal

---

[6]  5 U.S.C. sec. 8331(6) was repealed by the Omnibus Budget Reconciliation Act of 1980, Pub. L. 96-499, tit. IV, sec. 403(b), 94 Stat. 2606.  Cf. 5 U.S.C. sec. 8337 (1994).

injuries or sickness". "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. Thus, the exclusion must derive from some sort of tort claim against the payor. Rickel v. Commissioner, 900 F.2d 655, 658 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).

The Federal Employees' Compensation Act provides compensation to Federal employees for work-related injuries. 5 U.S.C. secs. 8101-8151 (1994). The liability of the United States or any instrumentality thereof, in or under any judicial proceeding, civil action, workmen's compensation statute, or Federal tort liability statute, is expressly limited to the relief provided in the Federal Employees' Compensation Act. 5 U.S.C. sec. 8116(c). Petitioner, however, received her disability annuity under 5 U.S.C. secs. 8451-8456 (1994). Since the exclusive legal remedy for redress of petitioner's tort claims against the Federal Government resulting from on the job injuries is contained in the Federal Employees' Compensation Act, it is axiomatic that petitioner's disability annuity, received under a different set of statutes, must have been received for a different purpose. See Flaherty v. Commissioner, T.C. Memo.

1987-61 (holding that an Internal Revenue Service employee's disability retirement annuity payments received under the Civil Service Retirement System were not excludable under section 104(a)(2) because the payments were intended to provide for the physical and mental well-being of the employee and were not damages from the settlement or prosecution of a legal suit); see also Federal Employees' Retirement System Act of 1986, Pub. L. 99-335, sec. 100A, 100 Stat. 516 (listing the purposes of FERS, none of which include compensation for tort type claims). Thus, section 104(a)(2) does not apply here.

Sections 104(a)(3) and 105(a)

Section 104(a)(3) excludes from gross income amounts received by an employee "through accident or health insurance for personal injuries or sickness" except to the extent such amounts are (A) attributable to contributions made by the employer which were not includable in the gross income of the employee, or (B) paid by the employer. Section 105(a) is essentially the mirror image of section 104(a)(3), and, subject to two exceptions, includes in the gross income of an employee amounts received through accident or health insurance for personal injuries or sickness to the extent such amounts are (A) attributable to

contributions by the employer which were not includable in the gross income of the employee or (B) are paid by the employer.[7]

Section 105(b) provides an exclusion for amounts paid by an employer to the taxpayer to reimburse the taxpayer for expenses for medical care.  Medical expense reimbursements are not at issue in this case, so the exception in section 105(b) does not apply.  Section 105(c) excludes from gross income amounts paid by an employer to the extent such amounts:  (1) Constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement of the taxpayer, and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.  However, section 105(c) applies to exclude payments from gross income only if the plan or contract under which such payments are made varies the amount of the payments according to the type and severity of the injury suffered by the employee.  Rosen v. United States, 829 F.2d 506, 509 (4th Cir. 1987); Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir. 1987), affg. en banc T.C. Memo. 1985-25.

---

[7]  Former sec. 105(d) provided a limited exclusion from gross income for amounts received in lieu of wages prior to attaining age 65 by completely disabled persons retired on disability. Sec. 105(d) was repealed by sec. 122(b) of the Social Security Amendments of 1983, Pub. L. 98-21, 97 Stat. 87, and replaced with a credit for the permanently and totally disabled for years beginning after Dec. 31, 1983, provided in sec. 37.  Sec. 37 was subsequently renumbered as sec. 22.  Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 484, 826. Respondent has conceded that petitioner is entitled to a credit under sec. 22 for the years in issue.  See supra note 2.

Under FERS, the computation of disability retirement annuity payments does not vary with the nature of the injury; all employees considered "disabled" receive benefits under a single formula based on the employee's "average pay". 5 U.S.C. secs. 8451 and 8452. Accordingly, petitioner is not entitled to exclude the disability annuity payments under section 105(c). See Beisler v. Commissioner, supra at 1309.

Thus, we are left to consider the possibility of exclusion under section 104(a)(3) or 72(b). To grant petitioner relief from taxation under either section 104(a)(3) or 72(b), it is necessary to determine the amount of the disability annuity payments attributable to petitioner's contributions toward the disability annuity as well as the percentage of the overall contributions that this constitutes. While petitioner's participation in FERS may require after-tax contributions, there is no evidence of the amount of her after-tax FERS contributions. See 5 U.S.C. sec. 8422(a)(1) and (2) (1994). Accordingly, we are unable to grant petitioner any relief under either section 104(a)(3) or 72(b).[8]

Petitioner claims that she is being persecuted for the Government's mistake. In legal terms, this amounts to an argument that respondent should be equitably estopped from

---

[8] We need not decide, therefore, any questions concerning the interrelationship or applicability of these two sections to the disability annuity received by petitioner.

assessing the deficiencies against petitioner because OPM provided petitioner with erroneous advice concerning the taxability of her disability annuity payments. Even if we assume that equitable estoppel can operate against the Government in some circumstances, there is no basis for applying the concept here. Cf. OPM v. Richmond, 496 U.S. 414, 420 (1990). The traditional elements of estoppel are: (1) Misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. Heckler v. Community Health Services, 467 U.S. 51, 59 (1984); Kennedy v. United States, 965 F.2d 413, 417 (7th Cir. 1992).

Both the Heckler and Kennedy cases discussed the detriment requirement. In Heckler v. Community Health Services, supra, the Supreme Court described the "detriment" suffered as the inability to retain money (medicare reimbursements) that should never have been received in the first place. The Supreme Court stated:

> this is not a case in which * * * [a party] has lost any legal right, either vested or contingent, or suffered any adverse change in its status. * * * Here * * * [the party] lost no rights but merely was induced to do something which could be corrected at a later time.
> There is no doubt that * * * [the party] will be adversely affected by the Government's recoupment of the funds that it has already spent. It will surely have to curtail its operations and may even be forced to seek relief from its debts through bankruptcy. * * * [The party] may need an extended period of repayment or other modifications in the recoupment process if it is to continue to operate, but questions concerning the Government's method of enforcing collection are not before us. The question is

whether the Government has entirely forfeited its right to the money. [Id. at 61-62; fn. refs. omitted.]

In Kennedy v. United States, supra, the Court of Appeals for the Seventh Circuit held that the underpayment of taxes lawfully owing did not constitute a detriment, relying on Heckler v. Community Health Services, supra. The Court of Appeals for the Seventh Circuit stated that "We do not believe the estoppel doctrine should be used against the government when the estoppel claimant's detriment is the loss of a windfall that could have never been statutorily effectuated". Kennedy v. United States, supra at 418-419; see also Thomas v. Commissioner, 92 T.C. 206, 227 (1989). Accordingly, petitioner is not entitled to relief under the equitable estoppel doctrine.

Petitioner also demands a jury trial. In Mathes v. Commissioner, 576 F.2d 70, 71-72 (5th Cir. 1978), affg. T.C. Memo. 1977-220, the Court of Appeals for the Fifth Circuit answered this demand by stating that:

> The Seventh Amendment preserves the right to jury trial "in suits at common law." Since there was no right of action at common law against a sovereign, enforceable by jury trial or otherwise, there is no constitutional right to a jury trial in a suit against the United States. Thus, there is a right to a jury trial in actions against the United States only if a statute so provides. Congress has not so provided when the taxpayer elects not to pay the assessment and sue for a redetermination in the Tax Court. For a taxpayer to obtain a trial by jury, he must pay the tax allegedly owed and sue for a refund in [United States] district court. The law is therefore clear that a taxpayer who elects to bring his suit in the Tax Court has no right, statutory or constitutional, to a trial by jury. [Citations omitted.]

Finally, in passing, petitioner has mentioned that she incurred significant medical expenses.  Section 213(a), subject to certain limitations, allows taxpayers a deduction for medical expenses that are not compensated for by insurance or otherwise. However, petitioner has not introduced any evidence to establish the amount of her medical expenses for the years in issue. Accordingly, we are unable to grant petitioner any relief from the determined deficiencies in the form of a deduction for medical expenses.

We conclude that, except as provided in respondent's concessions, petitioner is not entitled to any relief from the determined deficiencies.  We reach this decision with some reluctance, but note, as did the Supreme Court in Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 386 (1947), that "The circumstances of this case tempt one to read the [regulations] [and statutes] * * * with charitable laxity.  But not even the temptations of a hard case can elude the clear meaning of the [regulations] [and statutes]."

To reflect the foregoing,

Decision will be entered

under Rule 155.