ESTATE of Bessie I. MUELLER, Deceased; John S. Mueller, Personal Representative, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 97–1856.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1998.

Decided Aug. 20, 1998.

Stevan Uzelac (argued and briefed), Miller, Canfield, Paddock & Stone, Detroit, Michigan, for John S. Mueller.

Stevan Uzelac, Michael A. Indenbaum (briefed), Miller, Canfield, Paddock & Stone, Detroit, Michigan, for Estate of Bessie I. Mueller, Deceased.

Jonathan S. Cohen (briefed), Charles Bricken (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Commissioner of Internal Revenue.

Before: KEITH, BATCHELDER, and DAUGHTREY, Circuit Judges.

## OPINION

BATCHELDER, Circuit Judge:

This is a case in which a taxpayer and the Internal Revenue Service ("IRS") disagree over the effect of an audit adjustment to the taxpayer's estate tax return. Specifically at issue are 8,924 shares of stock that the taxpayer undervalued when it filed the estate tax return, as a result of which the taxpayer underreported the taxable value of the shares and, consequently, underpaid its estate taxes. In addition, the government's determination that the stock was worth more than taxpayer claimed also had the effect of creating an overpayment in capital gains tax paid by the taxpayer in a previous year on the stock's sale. Just as the higher stock valuation resulted in a higher · taxable amount, it also resulted in a higher basis in the stock and, therefore, a smaller amount of capital gains upon the sale of the stock. The problem for taxpayer is that the statute of limitations now bars any claim for a refund of the overpaid capital gains tax.

The question on appeal is whether the taxpayer is entitled to assert the defense of equitable recoupment in order to use the time-barred overpayment of capital gains taxes as a set-off against the timely charged deficiency in estate taxes. Before we can reach this question, however, we must first decide whether the Tax Court had the juris-

diction to apply the doctrine of equitable recoupment. Because we find that the Tax Court lacked jurisdiction to consider a claim for equitable recoupment, we affirm the dismissal of the taxpayer's suit without reaching the merits of the equitable recoupment claim.

## I.

The appellant, Estate of Bessie I. Mueller,[1] filed its estate tax return and paid $5,523,953 which it had determined to be its tax liability. Upon subsequent audit, however, the IRS determined that appellant had made several errors. First, it discovered that appellant failed to claim a credit in the amount of $1,152,649 available to it for prior paid taxes under I.R.C. §. 2013. Second, it found that the appellant claimed $6,000 more in unified credits than it was allowed. Finally, and most important to this case, the IRS determined that appellant had underreported the taxable value of 8,924 shares of Mueller Co. stock at $1,505 per share rather than at $2,150 per share. Based on these and other smaller adjustments, the IRS determined that appellant owed an estate tax deficiency of $1,985,624.

Appellant filed a timely petition in Tax Court seeking a redetermination of its estate tax liability, but failed to file a protective claim for refund of its income tax that, according to the IRS's valuation of the stock, it had overpaid. The refund claim expired and appellant subsequently amended its petition to the Tax Court to assert the affirmative defense of equitable recoupment against the estate tax deficiency. Thus, appellant sought two forms of relief from the Tax Court: it sought to have the valuation of the stock redetermined and it sought to have the time-barred income tax refund set-off via equitable recoupment against the estate tax deficiency.

After a trial, the Tax Court found that the stock should have been valued at $1,700 per share, rather than $1,505 per share as appellant had claimed or $2,150 per share as the IRS had claimed. This new valuation result-

1. Actually, there are two petitioners in this appeal-the Estate of Bessie I. Mueller and John S. Mueller, its personal representative-but, for the purpose of clarity, we will refer to those parties as either the taxpayer or the appellant.

ed in an estate tax deficiency of $957,099, due to the underreported value of the stock, but the deficiency was offset by the estate's failure to claim the $1,152,649 credit for prior taxes paid. Thus, the Tax Court held that there was no deficiency at all, but rather that appellant had overpaid its estate taxes. This decision was the first of three rendered by the Tax Court, and we shall refer to it as *Mueller I*.

After *Mueller I*, the IRS moved to dismiss the estate's claim for equitable recoupment for lack of jurisdiction. A divided Tax Court denied the motion, ruling that it had jurisdiction to entertain the affirmative defense of equitable recoupment. This decision, which we call *Mueller II*, dealt only with the Tax Court's jurisdiction to consider the defense of equitable recoupment, and did not address the merits of the question. After further trial proceedings, the Tax Court issued its decision in *Mueller III*, holding that equitable recoupment did not apply in the circumstances of this case.

## II.

▮ The dispute here is entirely a legal one, as neither party contests any issues of fact. We review the legal conclusions of the tax court *de novo*. *Estate of Swallen v. Commissioner of Internal Revenue*, 98 F.3d 919, 922 (6th Cir.1996); *see also Wolpaw v. Commissioner of Internal Revenue*, 47 F.3d 787, 790 (6th Cir.1995); *United States v. Hans*, 921 F.2d 81, 82 (6th Cir.1990). The taxpayer is appealing the Tax Court's *Mueller III* decision not to apply equitable recoupment and does not appeal the *Mueller II* decision to exercise jurisdiction over the equitable recoupment claim. Before we can reach the question decided in *Mueller III*, however, we must first determine whether the Tax Court was correct to hold, as it did in *Mueller II*, that it had the jurisdiction to consider such a claim. "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v.*

*Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)).

▮ The Tax Code specifies that "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on them by [Title 26]." 26 U.S.C. § 7442. In addition, the Supreme Court has held that "[t]he Tax Court is a court of *limited jurisdiction* and lacks general equitable powers." *Commissioner of Internal Revenue v. McCoy*, 484 U.S. 3, 7, 108 S.Ct. 217, 98 L.Ed.2d 2 (1987) (emphasis added). Insofar as is relevant to the present case, the Tax Court has "jurisdiction to redetermine the correct amount of a deficiency." 26 U.S.C. § 6214(a).

A deficiency results when the IRS imposes a tax upon the taxpayer that is higher than that reported on the taxpayer's tax return. The deficiency may result from an oversight or, as is the case here, it may result from a disagreement as to the amount owed. A taxpayer has two choices when he disagrees with an assessment of deficiency by the IRS: he may pay the tax and then sue in District Court for a refund, or he may refuse to pay the tax and submit his claim to the limited jurisdiction of the Tax Court for redetermination of the deficiency. If the taxpayer chooses the second course, he gains the benefit of not paying the tax until the issue is resolved, but he must pay the price of submitting his claim to a court of limited jurisdiction.

A deficiency redetermination sought in the Tax Court should not be confused with a refund suit filed in the district court. Whereas the deficiency redetermination is nothing more than the judicial review of an assessment made by an administrative agency, a refund suit is an "action brought to recover a tax erroneously paid, [which,] although an action at law is equitable in its function. It is the lineal successor of the common count *indebitatus assumpsit* for money had and received." *Stone v. White*, 301 U.S. 532, 534, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). Thus, by refusing to pay the tax and filing for a redetermination in the Tax Court, the taxpayer sacrifices the opportunity to have his claim adjudicated by a court with the jurisdiction to effect justice both in law and in equity.

In order to determine the correct amount of the deficiency, the Tax Court may need to consider "facts with relation to taxes for other years or other calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, *but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.*" 26 U.S.C. § 6214(b) (emphasis added). Thus, § 6214(b) makes it abundantly clear that the Tax Court's jurisdiction extends no further than the amount of the deficiency before it.

The Tax Court in *Mueller II* made much of the fact that estate taxes are not mentioned in § 6214(b)'s prohibition against determining whether taxes in other years have been overpaid or underpaid. The statute does not mention estate taxes, argued the Tax Court in *Mueller II*, so its limitations must not apply to estate taxes. It is true that the statute does not mention estate taxes. It is also true that § 6214(b) is titled "Jurisdiction over other years and quarters," a heading which can apply only to periodic taxes such as income or gift taxes. The estate tax is not a periodic tax. It accrues only at the death of the taxpayer, and although it may be a source of great sorrow to the IRS, the average taxpayer will die only once. Section 6214(b) does not specifically mention estate taxes because it makes no sense to speak of estate taxes for other years or other calendar quarters. The statute's failure to mention estate taxes does not support the theory that the Tax Court's jurisdiction is limited in income and gift tax cases, but unlimited in estate tax cases.

Section 6512(b) lends credence to this analysis. That section confers upon the Tax Court the jurisdiction to determine an overpayment if it is an overpayment: "[1] of income tax for the same taxable year, [2] of gift tax for the same calendar year or calendar quarter, [or 3] of estate tax in respect of the taxable estate of the same decedent." 26 U.S.C. § 6512(b) (emphasis added). Thus, the Tax Court has jurisdiction to determine an overpayment only if the overpayment concerns the same kind of tax and, as to income and gift taxes, only if it was paid in the same

year. This makes sense because determining an overpayment of a particular kind of tax in a particular year is no different from determining the accuracy of an assessment for that same tax.

Taken together, §§ 6214(b) and 6512(b) explicitly confer on the Tax Court jurisdiction to do no more than determine the amount of the deficiency before it. The Tax Court's jurisdiction cannot extend beyond its statutory confines to encompass an equitable remedy such as recoupment because the Tax Court "is a court of limited jurisdiction and lacks general equitable powers," *McCoy,* 484 U.S. at 7, 108 S.Ct. 217, and because "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on them by [Title 26]." 26 U.S.C. § 7442. This statutory analysis only confirms what federal courts have been holding for more than 50 years.

In *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943), the Supreme Court faced the question of "the jurisdiction of the Board of Tax Appeals [the predecessor to the Tax Court] to determine and to apply a prior tax overpayment against a tax deficiency for a particular year." Like the present case, *Gooch Milling* involved an IRS audit that disclosed an erroneous valuation of certain of the taxpayer's property. The new valuation resulted in a deficiency in the taxpayer's income tax return for the 1936 fiscal year and a correlating overpayment of income taxes for the 1935 fiscal year. Also like the present case, the statute of limitations had already run to bar the taxpayer's claim for a refund of the overpaid 1935 taxes. After analyzing I.R.C. §§ 272 and 322(d), now codified as §§ 6214(b) and 6512(b), the Supreme Court held that "[t]he Board's want of jurisdiction to apply the doctrine of equitable recoupment in this case is manifest from these provisions." *Gooch Milling,* 320 U.S. at 420, 64 S.Ct. 184.

According to the *Gooch Milling* Court, the Tax Court did not need to look at the 1935 overpayment in order to correctly determine the deficiency in 1936. "The respondent, in other words, was seeking to have the 1935 overpayment used, not as an aid in redetermining the 1936 deficiency, but as an affirma-

tive defense or offset to that deficiency." *Id.* at 421, 64 S.Ct. 184. Such a defense, held the Court, would necessarily involve the Tax Court's determining whether there was an overpayment in 1935, a determination strictly prohibited by the plain language of § 272(g). *Id.*

The reasoning in *Gooch Milling* is just as applicable to the determination of estate tax deficiencies as it is to determination of income tax deficiencies. In both situations, in order to apply equitable recoupment, the Tax Court would have to move beyond the scope of the deficiency at hand and determine an overpayment of a tax assessment not properly before it. As we explained above, §§ 6214(b) and 6512(b) (formerly §§ 272 and 322(d)) make it clear that such a determination exceeds the limits of the Tax Court's jurisdiction.

Since the *Gooch Milling* decision, federal courts, including the Tax Court itself, have repeatedly cited the case for the proposition that the Tax Court does not have the jurisdiction to consider the affirmative defense of equitable recoupment. *See, e.g., Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 303, 67 S.Ct. 271, 91 L.Ed. 296 (1946) (citing *Gooch Milling* and holding unequivocally that "the Tax Court has no jurisdiction to consider recoupment"); *Mohawk Petroleum Co. v. Commissioner of Internal Revenue,* 148 F.2d 957, 959 (9th Cir.1945) (affirming the Tax Court's refusal to apply equitable recoupment and noting that "[t]he Supreme Court ... decided this question adversely to the contention of the appellant ... holding that the Board of Tax Appeals was prevented by § 272(g) ... from entertaining such a claim"); *Elbert v. Johnson,* 164 F.2d 421, 424 (2d Cir.1947) ("[T]he Tax Court lacked power to allow as a credit against the 1938 income tax, by way of recoupment, the gift tax paid in 1936."); *Wiener Machinery Co., Inc. v. Commissioner of Internal Revenue,* 16 T.C. 48, 54, 1951 WL 62 (1951) (citing *Gooch Milling* for the proposition that "[t]his Court lacks the power to apply the doctrine of equitable recoupment"); *Estate of Van Winkle v. Commissioner of Internal Revenue,* 51 T.C. 994, 999, 1969 WL 1733 (1969) ("The Supreme Court has already decided the

question as to whether the Tax Court has jurisdiction to consider application of the doctrine of equitable recoupment. It specifically held that the remedy is available to taxpayers only in the United States District Courts."). Thus, the Tax Court in *Mueller II* rebelled against the overwhelming weight of statutory authority and prior case law.

As support for its sudden departure, the *Mueller II* Court cited the Supreme Court's decision in *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). The taxpayer in *Dalm* had litigated an income tax deficiency in an earlier Tax Court proceeding in which she had not raised the issue of equitable recoupment. She then brought a subsequent claim in the District Court seeking, effectively, to reopen the matter and have a time-barred overpayment of gift taxes offset against her income tax deficiency by means of equitable recoupment. The Supreme Court held that a claim of equitable recoupment cannot form an independent basis for jurisdiction, but can only be raised as a defense in a proceeding over which the court already has jurisdiction. 494 U.S. at 608, 110 S.Ct. 1361. According to the Court:

> Our holding today does not leave taxpayers in Dalm's position powerless to invoke the doctrine of equitable recoupment. Both the Secretary, at the administrative level, and a court *which has jurisdiction* over a timely suit for refund may consider an equitable recoupment claim for an earlier tax paid under an inconsistent theory on the same transaction.

*Id.* at 610, 110 S.Ct. 1361 (citations omitted) (emphasis added).

The *Dalm* Court did not reach the issue of whether the Tax Court is "a court which has jurisdiction," specifically noting that "[w]e have no occasion to pass upon the question whether Dalm could have raised a recoupment claim in the Tax Court." *Id.* at 611 n. 8, 110 S.Ct. 1361. Despite the limited scope of the holding in *Dalm* and notwithstanding the Supreme Court's express admonition that its decision did not touch upon the jurisdiction of the Tax Court to apply the doctrine of equitable recoupment, the *Mueller II* Court relied on *Dalm* to support its departure from

the long line of precedent we cited above. *Dalm* simply does not justify such a departure.

### III.

The decision of the Tax Court to exercise jurisdiction in this case flies in the face of unambiguous statutory language as well as 50 years of Supreme Court precedent. For these reasons, we AFFIRM the dismissal of the taxpayer's claim for equitable recoupment on the grounds that the Tax Court lacked jurisdiction to effect such a remedy.